1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, INC., a Delaware corporation,

Plaintiff,

v.

JOHN DOES 1–50,

Defendants.

No. 2:21-cv-627

COMPLAINT

## I.    INTRODUCTION

1.    Amazon is one of the most well-known and trusted brands in the world.  John Does 1–50 ("Defendants") operate an unlawful advertising scheme that infringes Amazon's trademarks in order to fraudulently generate internet traffic so as to unlawfully profit from affiliate networks and online advertisers.  Defendants' scheme harms Amazon, the advertisers who pay fees for Defendants' fraudulently generated traffic, and the numerous victims who receive Defendants' text messages on their mobile phones and visit their websites.

2.    Defendants are affiliate marketers who refer people to websites for money.  Broadly speaking, an affiliate sources traffic (i.e., people) for websites through a variety of means, including, relevant to this case, text message campaigns.  The affiliate then sells this traffic to an advertiser, or to a third party such as an affiliate network who sells it to an advertiser.

COMPLAINT - 1
(case no. 2:21-cv-627)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

3.      Defendants' scheme starts with text messages that deceive victims into believing the messages are from Amazon.  Among other tactics, Defendants often use "Amazon" and other Amazon trademarks in the text messages, address the messages to "customers," and claim to give away "rewards" or other "gifts."  Defendants intentionally word their text messages to entice victims to click a link within each message.

4.      By clicking the link in Defendants' text messages, victims are routed to a website that contains a purported "survey."  The survey often greets the victim as "Amazon Shopper" or "Amazon User."  Like the text message, this survey uses Amazon's trademarks and indications of Amazon's brand, and promises a "reward" for a victim's participation.  After answering questions that often relate to Amazon, the victim is referred to other websites to claim the "reward."  However, there is no "reward," and victims are, instead, directed to an advertiser's website where they can purchase a product that has no relation to Amazon. Defendants monetize this traffic by selling it to multiple affiliate networks that in turn sell the traffic to advertisers, who rely on the traffic to generate sales of the products they promote.

5.      As a result of Defendants' scheme, Defendants are liable to Amazon for trademark infringement, false designation of origin and association, and false advertising. Amazon brings this lawsuit to stop Defendants' unlawful scheme and hold them accountable for the harm they have caused.

## II.      PARTIES

6.      Amazon.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington.  Through its subsidiaries, Amazon owns and operates the Amazon.com website, the Amazon.com counterpart international websites, and Amazon store (collectively, "Amazon").

7.      The true identities of Defendants are not presently known to Amazon. On information and belief, Defendants are individuals and entities working in active concert to knowingly and willfully run the scheme alleged in this Complaint, including by using

COMPLAINT - 2
(case no. 2:21-cv-627)

Amazon's trademarks and brand to deceive victims.

### III.    JURISDICTION AND VENUE

8.    The Court has subject matter jurisdiction over Amazon's claims for trademark infringement (15 U.S.C. § 1114) and violations of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

9.    The Court has personal jurisdiction over Defendants because they transacted business and committed tortious acts within and directed to this District, and Amazon's claims arise from those activities.  On information and belief, Defendants' scheme specifically targets users in this District by sending text messages to victims located in this District, and Defendants' websites actively solicit interaction from users in this District by deceiving them into participating in online surveys.  Defendants' scheme has also infringed Amazon's intellectual property, which foreseeably caused harm to Amazon in this District.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington.

11.    Pursuant to Local Civil Rule 3(d), intra-district assignment to the Seattle Division is proper because the claims arose in this Division where (a) Amazon resides, (b) the injuries giving rise to suit occurred, and (c) Defendants directed their unlawful conduct.

### IV.    FACTS

**A.    Amazon is a Trusted Brand**

12.    Amazon is a highly trusted and widely recognized brand.  Among other businesses, Amazon runs an e-commerce website.

13.    In connection with its online sales, Amazon offers gift cards, promotions, and a variety of services.  One of Amazon's most popular offerings is Prime, which is a paid membership program that provides discounts on shipping and free access to digital content (to name just two of Prime's features).

COMPLAINT - 3
(case no. 2:21-cv-627)

14.     Amazon sends text messages to its customers in connection with its products and services.  As a result, Amazon's customers have come to expect to receive text communications from Amazon, to use Amazon's services online, and to interact with Amazon online.

15.     Amazon's products and services are readily identifiable to consumers around the world because of the company's substantial and years-long investment of time, money, and other resources in Amazon's brand, including the development of valuable intellectual property.

16.     Amazon exclusively owns numerous U.S. trademark registrations and pending applications.  These trademarks are a critical component of a consumer's ability to readily identify Amazon products and services.

17.     As alleged in this Complaint, the following trademarks and service marks (collectively "Amazon Trademarks") were unlawfully used to further Defendants' scheme:

| **Mark** | **Registration No. (International Classes)** |
|---|---|
| AMAZON | 2,738,837 (Int. Cl. 38)<br><br>2,832,943 (Int. Cl. 35)<br><br>4,907,371 (Int. Cls.:35, 41 and 42) |
| AMAZON.COM | 2,167,345 (Int. Cl. 35)<br><br>2,559,936 (Int. Cl. 35, 36, 42)<br><br>2,633,281 (Int. Cl. 38)<br><br>2,837,138 (Int. Cl. 35) |
| amazon | 5,508,999 (Int. Cl. 35) |

COMPLAINT - 4
(case no. 2:21-cv-627)

| | 3,904,646 (Int. Cl. 35) |
|---|---|
| PRIME | 5,218,535 (Int. Cl. 35) <br><br> 5,489,315 (Int. Cl. 42) <br><br> 5,218,536 (Int. Cl. 41) |

18.     The Amazon Trademarks have been used exclusively and continuously by Amazon, and have never been abandoned.  The above U.S. registrations for the Amazon Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the Amazon Trademarks constitute prima facie evidence of their validity and of Amazon's exclusive right to use the Amazon Trademarks pursuant to 15 U.S.C. § 1057(b).

**B.     Affiliate Marketing Abuse**

19.     A successful website requires "traffic," which is a term used to describe people who visit a website.  Websites need traffic like physical retailers need visitors.  Retail stores need to generate foot traffic in order to generate sales opportunities, and similarly, websites need to generate traffic, or clicks, in order to monetize the website.

20.     Affiliate marketing arose from the need to source relevant traffic for websites.  Broadly speaking, an affiliate publishes material to generate traffic on behalf of an advertiser (i.e., the party who wants the traffic for their website).

21.     An affiliate can source traffic through a variety of means, including, relevant to this case, text message campaigns.

22.      The demand for traffic also spurred the growth of entities who help connect affiliates and advertisers.  One such example is an affiliate network, which acts as an intermediary between the advertiser and the affiliates.  In this model, an advertiser approaches a

COMPLAINT - 5
(case no. 2:21-cv-627)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

single network, which then contracts with one or more affiliates to provide the traffic desired by the advertiser.

23.     In text message campaigns, like the one at issue in this case, affiliates use domains that are designed to redirect the user to another domain.  These redirect domains do not render content, such as a webpage, in a user's browser and are generally not visible to the user.  Therefore, a user clicking on the link in the affiliate's text message sees only the final landing page, but they may have passed through multiple redirect domains to get there.

24.     These redirects are used for a variety of legitimate purposes, such as tracking the traffic generated from a campaign and referring traffic to another company.

25.     However, they can also be used for malicious purposes such as stripping the traffic of information identifying its source.

26.     In one common form of affiliate abuse, affiliates generate traffic by impersonating well-known brands such as Amazon.  Affiliates exploit the brand's recognition with customers to entice victims to click through to a third-party advertiser's website. The affiliate is then paid for this fraudulent traffic.

27.     The generation of traffic through the misuse of a brand's intellectual property harms everyone involved (except the affiliate).  It harms the victim who is deceived by the affiliate's text message or website, the brand whose intellectual property is associated with a fraudulent campaign, and the advertiser who pays for the traffic.

**C.     Defendants' Unlawful Affiliate Marketing Scheme**

28.     Defendants are engaged in a widespread, fraudulent marketing scheme that bombards victims with unauthorized text messages that abuse Amazon's brand to generate traffic.  Defendants then profit from fees for this fraudulently generated traffic paid to them by affiliate marketing networks and advertisers.

COMPLAINT - 6
(case no. 2:21-cv-627)

### 1. Defendants First Send Victims Unauthorized Text Messages Using Amazon's Trademarks

29.     Defendants' scheme begins with text messages that display the Amazon Trademarks and often invite victims to claim a gift or prize from Amazon.  Defendants send text messages to victims in Washington, and, on information and belief, elsewhere in the United States.

30.     Defendants intentionally design their text messages to appear as though they originate with Amazon.  For example, in some instances, Defendants address the victim as "Amazon customer of the year" or encourage the victim to "claim your gift from AMAZON*PRIME."  In other instances, Defendants claim that the victim's engagement with the text message will allow them to claim "Amazon Rewards credit."  Defendants frame other messages as though Amazon wishes to rectify some unspecified wrongdoing, proffering, "Amazon apologizes! Our gift to you is this Macbook Pro."

31.     Screenshots from five examples of Defendants' text messages appear below (with recipients' names and unique URL paths redacted):





Text Message
Today 8:54 AM

Amazon customer of the year: ███████. Your prize is this brand new Macbook Pro. Receive it tomorrow: iuvcb.info/

Text Message
Today 18:12

Amazon: Congratulations ███████ you came 2nd in March's Amazon Airpods raffle! Click this link to set delivery: t7fxv.info/

IMPORTANT: ███████, Amazon apologizes! Our gift to you is this Macbook Pro. Fill in your details so we can ship it to you right away: cgaql.info/ ███████

32.     Defendants send these text messages from phone numbers administered by AT&T Mobility LLC.

33.     Each of Defendants' text messages contains a hyperlinked URL that appears in blue underlined font. Each domain in these URLs consists of a random string of four or five alphanumeric characters, followed by the .info top-level domain (TLD). Defendants have hosted many of these domains with Alibaba.com, LLC (which is associated with Alibaba Cloud US LLC), and registered these domains with Namecheap, Inc. One Namecheap account Defendants used to register these domains used the username healey62.

COMPLAINT - 8
(case no. 2:21-cv-627)

### 2.      Defendants Refer Victims Through Multiple Domains

34.      The purpose of Defendants' text messages is to entice victims to click the hyperlinked URL contained within the message.  Upon clicking that link, the victim is redirected through a series of domains that do not render content in the victim's browser, but serve to redirect the victim to Defendants' survey.  These redirect domains also hide Defendants' identities, protect their infrastructure from being flagged as fraudulent, and help track the associated traffic.

35.      Defendants have used a number of redirect structures and domains to funnel traffic.  Defendants generally route victims through a series of redirect domains that often includes one or more of the following domains: wonttakelong.com, getyoutothenext.com, safesecuritytrk.com, track.enterprizeus.com, go.proferplod.info, go.sanctiste.top, bmb.fansstars.online, and bm.jhytracker1.xyz.

36.      The domains wonttakelong.com and getyoutothenext.com were registered with Namecheap, Inc., and use services from Voluum, an online marketing tracking platform associated with Codewise LLC, to help track Defendants' fraudulently generated traffic.

37.      The domains safesecuritytrk.com and enterprizeus.com were registered with Namecheap, Inc.  The domain safesecuritytrk.com uses traffic-tracking services from ThriveTracker.com, LLC, and the domain track.enterprizeus.com uses traffic-tracking services associated with Codewise, LLC.

38.      The domains proferplod.info and sanctiste.top have been hosted by Leaseweb USA, Inc.

39.      The domains bmb.fansstars.online and bm.jhytracker1.xyz use traffic-tracking services provided by Bemob, Inc.

### 3.      Defendants Deceive Victims into Clicking Through a "Survey" By Using Amazon's Brand

40.      After being referred through Defendants' redirect domains, the victim arrives on Defendants' survey page that heavily uses Amazon's brand.  Defendants use multiple versions

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

of the survey page, but all versions follow the same pattern.

41.     When a victim arrives on Defendants' survey page, the victim typically sees an Amazon logo, and, in some cases, the phrase "Amazon Shopper Survey" or "Dear Amazon User."  For example, one version of this message begins "Dear Amazon User, Congratulations!" and another version begins, "Congratulations!" underneath a header with the title, "Amazon Shopper Survey."  The message often invites the victim to complete a survey about Amazon in order to get a "special" or "Exclusive" gift.  Screenshots of two versions of Defendants' message are below:





COMPLAINT - 10
(case no. 2:21-cv-627)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

42.      Victims are led through a survey that uses the Amazon Trademarks and other indications of Amazon's brand to deceive victims into believing the survey originates with or is sponsored by Amazon.

43.      Among other things, the survey often prominently displays Amazon's trademark "amazon," either stylized or in plain text, at the top of each page.

44.      Defendants also intentionally mimic Amazon's designs and color schemes, including Amazon's navy blue banner heading, gold rectangular buttons to indicate options victims can select, and often the white and gold shopping cart logo featured in the top right-hand corner of Amazon's retail websites.

45.      Defendants' survey asks questions about shopping on Amazon such as, "Would you recommend Amazon to friends?," "When was the last time you bought anything from Amazon?," and "How often do you use Amazon discount coupons / codes?"  Defendants intentionally craft these questions to appear as though they are collecting information for Amazon.  However, the survey is not affiliated with Amazon, and the victims' responses are not provided to Amazon.

46.      Partial screenshots of questions from three versions of Defendants' survey are below:



COMPLAINT - 11
(case no. 2:21-cv-627)

1
2
3
4
5
6
7
8
9
10
11



12
13
14
15
16
17
18
19
20
21
22
23
24



25      47.     At the bottom of some versions of the survey page, Defendants even imitate

26   Amazon's copyright statement: "© 1996-2020 Amazon.com, Inc."

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

48.     As a whole, the survey page is expressly designed and intended to give victims the false impression that it originates with, is affiliated with, or is sponsored by Amazon.  It is also intentionally designed to deceive victims into believing that completing the survey will lead victims to a reward.

49.     Defendants have used a number of domains to render their survey page.  Some examples of domains that have featured Defendants' survey page include amazon-na.winnerof.today, surveyandprizes.site, ccprizes.com, usnewali.xyz, and e.yourturnwbb.xyz.  The domain winnerof.today was registered through GoDaddy.com, LLC, and the subdomain amazon-na.winnerof.today uses services provided by Cloudflare, Inc.  The domain surveyandprizes.site is both registered with and hosted by Namecheap, Inc.  The domain ccprizes.com was registered through Namecheap, Inc., and uses services provided by Cloudflare, Inc.  The domains usnewali.xyz and e.yourturnwbb.xyz use services provided by Cloudflare, Inc.

**4.     Defendants Send Victims Who Complete the "Survey" to Affiliate Networks and Advertisers**

50.     After completing the survey, victims are presented with a message stating that they can supposedly "win" or claim a "reward" for completing the survey.

51.     In some cases, Defendants display a reward message immediately after the survey.  Partial screenshots of two different versions of this message are below:



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12



13       52.       Other times, before reaching the "reward" message, victims are presented with a

14  purported game that victims must click through.  Defendants design the game so that victims

15  always "win" and are presented with a supposed "reward."  A screenshot of one version of the

16  page Defendants display at the end of the purported game is below:

17
18
19
20
21
22
23
24
25



26
27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

53.     Similarly to what happens after a victim clicked the link in the original text message, clicking to accept one of Defendants' purported rewards sends the victim through a series of redirect domains, some of which are domains controlled by an affiliate network. The affiliate network then redirects the victim to an advertiser's page where the victim can purportedly purchase the product they selected or were supposedly awarded (or a similar item) on Defendants' page.

54.     These redirect domains have included safesecurecvr.com, charlietrk.com, ikra.sachnolt.com, am20trk.com, clickmob.c0c.xyz, and oeksktrk.com.

55.     The domains safesecurecvr.com, charlietrk.com, sachnolt.com, and c0c.xyz were registered with Namecheap, Inc.  The domain safesecurecvr.com uses ThriveTracker.com, LLC's traffic-tracking services.  The domains charlietrk.com and c0c.xyz have used services provided by Cloudflare, Inc.  The subdomain ikra.sachnolt.com uses traffic-tracking services associated with Codewise, LLC.

56.     The domain oeksktrk.com was registered with and is hosted by Google, LLC.

57.     The domain am20trk.com was registered with DreamHost, LLC, and is hosted by Google, LLC.

58.     The products offered on the advertisers' pages have no relation to Amazon.

## V.     CAUSES OF ACTION

## **FIRST CAUSE OF ACTION**

### **Trademark Infringement (15 U.S.C. § 1114)**

59.     Amazon incorporates by reference the factual allegations contained in Section I–IV as though set forth herein.

60.     Defendants' activities infringe the Amazon Trademarks.

61.     Amazon advertises, markets, and distributes its products and services using the Amazon Trademarks, and it uses these trademarks to distinguish its products and services from the products and services of others in the same or related fields.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

62.     Because of Amazon's long, continuous, and exclusive use of the Amazon Trademarks, they have come to mean, and are understood by customers, users, and the public to signify, products and services from Amazon.

63.     Defendants use the Amazon Trademarks in commerce in a manner that is likely to cause confusion, mistake, or deception as to the source, origin, or authenticity of Defendants' text messages and websites.

64.     Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that Defendants' text messages and websites originate with or are authorized by Amazon, thereby harming Amazon and the public.

65.     At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, their authority to use the Amazon Trademarks and the confusion that the use of those trademarks would have on consumers as to the source, sponsorship, affiliation or approval by Amazon of Defendants' websites.

66.     Defendants are subject to liability for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

67.     As a result of Defendants' wrongful conduct, Amazon is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b).  The amount of money due from Defendants to Amazon is unknown to Amazon and cannot be ascertained without a detailed accounting by Defendants.  Alternatively, Amazon is entitled to statutory damages under 15 U.S.C. § 1117(c).

68.     Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  Amazon has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the Amazon Trademarks are unique and valuable property; (b) Defendants' infringement constitutes harm to Amazon's reputation and goodwill such that Amazon could not be made whole by any monetary award; (c) if Defendants' wrongful conduct

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

1    is allowed to continue, the public is likely to become further confused, mistaken, or deceived as

2    to the source, origin or authenticity of the infringing websites; and (d) Defendants' wrongful

3    conduct, and the resulting harm to Amazon, is continuing.

4                              **SECOND CAUSE OF ACTION**

5        **False Designation of Origin and False Advertising (15 U.S.C. § 1125(a))**

6        69.    Amazon incorporates by reference the factual allegations contained in Section I–

7    IV as though set forth herein.

8        70.    Amazon advertises, markets, and distributes its products and services using the

9    Amazon Trademarks, and it uses these trademarks to distinguish its products and services from

10   the products and services of others in the same or related fields.

11       71.    Because of Amazon's long, continuous, and exclusive use of the Amazon

12   Trademarks, they have come to mean, and are understood by customers, end users, and the

13   public to signify, products and services from Amazon.

14       72.    Amazon has also designed distinctive and aesthetically pleasing displays, logos,

15   icons, and graphic images (collectively, "Amazon designs") for its websites.

16       73.    Defendants' wrongful conduct includes the use of the Amazon Trademarks,

17   Amazon's name, and/or imitation designs (specifically displays, logos, icons, and/or graphic

18   designs virtually indistinguishable from the Amazon designs) in connection with Defendants'

19   commercial advertising or promotion.

20       74.    Defendants have used, and continue to use, the Amazon Trademarks, Amazon's

21   name, and/or imitation designs to deceive customers.  On information and belief, Defendants'

22   wrongful conduct misleads and confuses their users and the public as to the origin and

23   authenticity of the goods and services advertised, marketed, offered or distributed in connection

24   with Amazon's trademarks, name, and imitation visual designs, and wrongfully trades upon

25   Amazon's goodwill and business reputation.  Defendants' conduct constitutes (a) false

26   designation of origin, (b) false or misleading description, and (c) false advertising, all in

27

COMPLAINT - 17
(case no. 2:21-cv-627)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

1   violation of 15 U.S.C. § 1125(a).

2       75.    Defendants' acts constitute willful false statements in connection with goods

3   and/or services distributed in interstate commerce, in violation of 15 U.S.C. § 1125(a).

4       76.    Defendants are subject to liability for the wrongful conduct alleged herein, both

5   directly and under various principles of secondary liability, including without limitation,

6   respondeat superior, vicarious liability, and/or contributory infringement.

7       77.    Amazon is further entitled to injunctive relief, as set forth in the Prayer for

8   Relief below.  Defendants' acts have caused irreparable injury to Amazon.  The injury to

9   Amazon is and continues to be ongoing and irreparable.  An award of monetary damages

10  cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

11      78.    As a result of Defendants' wrongful conduct, Amazon is entitled to recover its

12  actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C.

13  § 1117(a)–(b).  The amount of money due from Defendants to Amazon is unknown to Amazon

14  and cannot be ascertained without a detailed accounting by Defendants.

15  **VI.    PRAYER FOR RELIEF**

16      WHEREFORE, Amazon respectfully prays for the following relief:

17      A.    That the Court enter judgment in Amazon's favor on all claims;

18      B.    That the Court issue an order permanently enjoining Defendants, their officers,

19  agents, representatives, employees, successors and assigns, and all others in active concert or

20  participation with them, from:

21      (i)    Using the Amazon Trademarks in connection with any offer, survey,

22  commercial email or text message, marketing campaign, or website;

23      (ii)    Using any other indication of Amazon's brand in connection with any

24  offer, survey, commercial email or text message, marketing campaign, or

25  website;

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

1          (iii)    Making any statement of an affiliation or connection to Amazon in

2                 connection with any offer, survey, commercial email or text message,

3                 marketing campaign, or website; or

4          (iv)    Assisting, aiding or abetting any other person or business entity in

5                 engaging or performing any of the activities referred to in subparagraphs

6                 (i) through (iii) above;

7       C.     That the Court enter an order requiring Defendants to provide Amazon a full and

8   complete accounting of all gross and net amounts earned in connection with the scheme alleged

9   in this Complaint;

10       D.     That Defendants' profits from the unlawful scheme alleged in this Complaint be

11   disgorged pursuant to 15 U.S.C. § 1117(a);

12       E.     That Defendants be required to pay all general, special, actual, and statutory

13   damages which Amazon has sustained, or will sustain, as a consequence of Defendants'

14   unlawful acts, and that such damages be enhanced, doubled, or trebled as provided for by 15

15   U.S.C. § 1117(a)–(b), or otherwise allowed by law;

16       F.     That Defendants be required to pay the costs of this action and Amazon's

17   reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. §

18   1117 or otherwise by law; and

19       G.     That the Court grant Amazon such other, further, and additional relief as the

20   Court deems just and equitable.

21       DATED this 11th day of May, 2021.

22                           DAVIS WRIGHT TREMAINE LLP

23                           By *s/ Bonnie E. MacNaughton*

24                               Bonnie E. MacNaughton, WSBA #36110

25                             *s/ Sara A. Fairchild*

26                             Sara A. Fairchild, WSBA #54419
                              920 Fifth Avenue, Suite 3300
                              Seattle, WA 98104

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

Phone:  (206) 622-3150
Fax:  (206) 757-7700
Email:  bonniemacnaughton@dwt.com
        sarafairchild@dwt.com

*s/ Jake Freed*
Jake Freed (*pro hac vice forthcoming*)
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Phone:  (415) 276-6532
Fax:  (415) 276-6599
Email:  jakefreed@dwt.com

*s/ Meagan A. Himes*
Meagan A. Himes (*pro hac vice forthcoming*)
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201
Phone:  (503) 778-5373
Fax: (503) 778-5299
Email:   meaganhimes@dwt.com

*Attorneys for Plaintiff Amazon.com, Inc.*

COMPLAINT - 20
(case no. 2:21-cv-627)